May it please the Court, Counsel, I represent the Appellant, Dean Christiansen, in his appeal seeking reversal and remand from the grant of a motion to dismiss his claims for violation of the fourth and fourteenth amendments. I would reserve two minutes for rebuttal. As indicated, this case is up on review from a motion for summary from a motion to dismiss. As such, the facts alleged in the complaint and the justifiable inferences which can be drawn for them favorable to Mr. Christiansen are what this court can consider in determining whether his force used by Officer Eral on the night of June 2nd, 2019. And those facts as set out in the complaint are that just before 2 a.m. on Sunday, June 2nd, 2019, a North Sioux City officer attempted to stop Mr. Christiansen as he was leaving a casino on the pretext of a mechanical issue with his truck. Mr. alleged by the North Sioux City officer that Mr. Christiansen ran some red lights and entered at least briefly the opposite lane of traffic. The chase quickly entered Sioux City itself, at which point officers from Sioux City attempted to use stop sticks in a manner violating the department's policy which resulted in disabling a bystander vehicle in front of Mr. Christiansen which Mr. Christiansen was able to avoid with those stop sticks also disabling the pursuing North Sioux City officer. At this point, Officer Eral engaged in the pursuit, also in direct violation of the department, his department's policies. While traveling at speeds over 80 miles per hour, Officer Eral announced that he was going to be utilizing a pit maneuver. Moments later he did so at high speeds in a location with an open and obvious light pole, spinning Mr. Christiansen out into that hole while there were no other vehicles, non-police vehicles, bystanders or pedestrians in the area. I'm just looking at your complaint to see how that was pleaded. It seems I suspected that your assertion that he wasn't an That is correct, your honor. Maybe you can tell me what paragraph in the complaint I should read for that allegation. That he was no threat to anyone? Yes. I didn't see a cite. I would say that the paragraph would be paragraph 51, which provides that when the pit was performed, the only vehicles in the vicinity were Dean's truck and the police vehicles. Okay, that's not an allegation that he was not an immediate threat to anyone. I believe that in the absence of others in the vicinity, that the inference that can be drawn is that there was no threat. If the We've got our high-speed chase cases. The assumption is with a certain level of high-speed driving in certain areas at certain times are inherently and always a risk, not just to other cars, but to pedestrians and what not, bicyclists, and all you want to talk about is cars. But that's not the public safety risk at issue. And I acknowledge that, your honor. How did you plead what I consider the legitimate public safety issue in the Supreme Court's equation? Well, we look at the circumstances as we pled them, and that this was at 2 a.m., which wasn't 12 a.m. on Main Street. This was at noon on Main Street. This was 2 a.m. In residential area. I don't believe that it was in a residential area, your honor. Where is that alleged? That is the specific location of the stop is not specifically alleged in the complaint. Well, you know. So the district court can, I mean, he's got the affidavits. This is not a video cam case, but you don't need that. Your honor, there are no affidavits in this motion to dismiss. And I think that's part of the, well, I think it distinguishes this case from the vast majority. That's a good point, but I think our high-speed chase cases, of which there are many, basically make, interpret Scott as creating a, in the Supreme Court, we lay down a more sensible rule. A police officer's attempt to terminate a dangerous high-speed car chase that threatens the lives of innocent bystanders does not And that means if all the complaint is alleging is that situation, a Rule 12b-6 dismissal is appropriate. That's the way I read our law interpreting Scott. And to a certain extent I agree with you on that. But I think that for these purposes the operative language from Scott is that threatens the lives of innocent bystanders. But it's not alleged to the contrary. And it's inherent. I don't believe that it is inherent. And I think, and the reason for that is if you look at the case laws, which I believe, at least as cited here across the board, are all summary judgment cases involving video evidence, involving depositions, affidavits, testimony, along those lines, that across the board, that I think with almost near uniformity, there is the acknowledgment of weaving through vehicles and traffic the presence of other vehicles having been proven by evidence presented by the defendant officers in those cases to justify the use of the force. I don't believe that under the pleading standards for a motion to dismiss, where the inferences need to be drawn favorable to the drafting party, that a requirement to state what was not present is necessary to state a plausible claim for purposes of a constitutional violation. I think that part of our position is that it was improper for the district court to essentially read in the presence of other vehicles into these circumstances. Does your complaint concede the presence of a civilian car that went over the sticks? We do. That is the one vehicle that is alleged in the complaint. Why isn't that enough? Because, your honor, at the point that the force was utilized by Officer Errol, that car, well, past that car, and the... But you realize the perverse practical outcome of your argument, and that is, you have to wait to take this sort of action until there's people around. The officer, at least based on what I understand to be the fact, knew that this was a dangerous situation. Knew that another civilian had been put in danger because of the stop, and chose to make the stop when there, arguably, were not other vehicles around. You're arguing he should have waited until there were pedestrians close by and then made the stop? No. I think the core of it is that our argument is not that it was improper to utilize a degree of force to end the chase. It is, in large part, the decision to end the chase at that specific location where there was an enhanced risk of harm from the maneuver that was being performed at the speeds it was being performed at. I think that those are circumstances that have to be taken into account in the reasonableness of the force, which is considered in the circumstances known to the officers at the moment the force is being utilized. Is that clear? In other words, the officer has to disregard everything that's happened up until that point and just take a snapshot of what's going on at the moment? I take your point that the decision is based in part on where it occurs, the speed, and that, but I don't think an officer needs to disregard everything that's happened up until that point. I agree with you on that. That it is the full scope of the circumstances known to the officer. I don't believe that in the facts as alleged in the complaint, the inferences that can be drawn from the complaint, that the justifications that appear in the summary judgment cases in which have been found sufficient to justify the use of deadly force, that those are present, that those can just be assumed to have been present because at 2 a.m. he was driving at those speeds for the officer that started on a pretextual mechanical issue. I believe that another axiom is that when an officer's actions are enhancing the danger, which I believe the Sioux City officer's actions, pursuit in violation of the policies, the use of stop sticks in violation of the policies, that when the officers are enhancing the dangers, the interest of the state in the force used is diminished. I believe that that is for the establishment of the law as well. I don't think the relevance of the policy violation is established in any law under applying Scott. I would disagree on that because I believe that... which says it's not dispositive, but it's highly relevant. I would say that in the 8th Circuit, this was in the Ludwig v. Anderson case which preceded the Scott v. Harris decision, the 8th Circuit said expressly in that case that department policy is a consideration relevant to the analysis of constitutionally excessive force. That was, like I said, Ludwig v. Anderson, a 1995 case from the 8th Circuit, and I would say post Scott v. Harris, if you look at the 5th Circuit's decision of Little v. Bexar County, that case also looked into the officer's training as to the futility of shooting at a moving vehicle. So I believe that those two cases present the law for consideration. The 5th Circuit does not present the law, and neither does Ludwig, but they're relevant, I mean they're responsive. Yes. They don't stake the law. No, that is correct, Your Honor, but I do believe that they do indicate that the policy is a relevant consideration in assessing the objective reasonableness of the excessive force. And as it applies to our 14th Amendment claim, the Porter v. Osborne case out of the 9th Circuit in 2008 also considered department policy as it related to an officer's intent to harm for a 14th Amendment violation. I see that I'm going into my rebuttal time, so I'd like to reserve that. Thank you. Thank you. Mr. Postolica. May it please the Court and Counsel, my name is Caleb Christofferson, I'm with the City of Sioux City. Okay, I thought I was going to be here, but it's not what's on my sticker. No, sir. No, I know, I know, and I'm appreciative that you came. Yes, sir. And on behalf of my clients and the City, we appreciate the Court's indulgence in allowing me to appear. Mr. Postolica, instead, I've never done this before, but hopefully you won't hold that against me. I guess to start, we're here because we're arguing about whether or not Magistrate Judge Mahoney committed reversible error by granting the City and ERLs and Chief Mueller's motion to dismiss. And when I'm referring to the appellees in this case, I'm just going to say the City, if that's okay with you. So the City's motion to dismiss was granted by Judge Mahoney, and we're here to decide if she committed reversible error by granting that motion. So the motion to dismiss, as has been pointed out, it is a little different from the cases cited because those were at the summary judgment stage. I don't want to get too much into that. I think that might be a distinction without a difference. But Judge Mahoney granted the motion to dismiss based on the facts alleged on the complaint, the four corners of the complaint, because that's all she had to go on for that. As was already pointed out by Judge Loken, a lot of the allegations of facts that there was no danger, that the force was unjustified, it's based on facts that were not alleged in the complaint. So I agree, Judge Loken, that facts not alleged are being urged by Christensen then to assert error against Judge Mahoney. And that can't stand. The opportunity to allege those facts was there that – sorry, I'm tripping up here a little here – but Christensen had the opportunity to allege those facts and did not do so. And all Judge Mahoney had was the four corners. And to depart from the four corners now on appeal and assert facts that tend to attribute error, that's not proper. Counsel, let me ask you, do you think that the alleged violation of the city's policies are relevant at all to the excessive force claim here? I don't think that they're materially relevant. As some cases cited, the Ludwig case – I don't want to depart from your question, I want to answer your question. The Ludwig case was brought up on one of those 28J letters that Judge Loken was talking about earlier today. If you didn't read it, that's fine and everything, but this late in the game, being either a 2020 case or a 1995 case – I know there were two of them – but this late in the game. But in Ludwig, apparently the department's policy was considered as a factor. Okay, you may consider it as a factor, but in the constitutional analysis, what's before this court is to decide whether there was a constitutional violation. As has been said in cases in this circuit and other circuits, police departments can make policies that are more restrictive. Was the issue in Ludwig – was it past the Scott balance and into the merits of reasonableness? I mean, here Scott says it's the risk to public safety that's balanced against the risk the maneuver creates to hurting the suspect. Yes, sir. Do you know of a case that talks about inherent risk? Yes, sir. The Scott case does. Also the Moore-Jones case. You were on the Moore-Jones case, Judge Loken. You talked about that it was an inherent risk. It cited Scott, Moore-Jones. Talked about that if you have a motorist fleeing police, yes, it creates an inherent risk to the public. It's the police's job to stop fleeing motorists. It's their job – because their job is to protect the public. And it is a highly dynamic, fluid, and ever-developing situation. You don't know the outcome. You can't know what's down the road ahead. What way down the road in this case is not known. A basic risk in the future is implicit in this kind of case. I'm sorry? A basic risk developing in the future is implicit in this kind of case, isn't it? Exactly, Judge Arnold. And what lay down the road ahead had this maneuver not been executed, we don't know. Christensen doesn't know. Christensen couldn't know. Nobody can know. At this point, we will never know what we saved by executing this maneuver. We also don't know exactly what the pursuing automobile knew about the future risk either. It's exactly that. It's exactly why it's the police's job to stop fleeing motorists. Because they don't know what lay ahead in the road either. I wanted to basically just sort of bring in the case law that has been most prevalently briefed by the city here. I don't want to rehash the brief. That's not why we're here. I just want to hit the highlights though. A lot of the jurisprudence in this circuit is progeny of Scott. The Supreme Court case that basically that the use of force is justified with a fleeing motorist. Now, the Scott case didn't involve a pit maneuver, but that officer did consider a pit maneuver. But I believe it was 85 miles per hour that that suspect in that case was traveling. And so the officer then rammed the rear end of that vehicle, which caused a collision and terrible consequences. And that's... Actually, we had a lot of high speed tort cases predating Scott, which were validated in Scott, including an in-bank case. Indeed. A sort of indication for the 8th Circuit being basically affirmed by the Scott case. I think Terrell and Sluice Archick and the others that occupied a lot of our time for two or more years were validated by Scott. I will confess I didn't read those cases, sir. I'm sorry. I'm not up to speed on those, but I think I take your point. Well, they were tort cases against counties for high speed chases that hurt the fleeing suspect. Right. It hurt the fleeing suspect. And the Scott case, of course, he was horribly injured. I believe he ended up a quadriplegic, which is very tragic. Nobody wants that. The 8th Circuit case is sort of kind of on the other end of, I guess, the harm spectrum. I want to visualize a spectrum here. So you have a fleeing motorist, a motorist fleeing police. You have Scott, which had very high speeds, very excessive behavior by the suspect, and a really bad outcome. Now Moore-Jones is kind of on the other side of this, where you had a vehicle, a suspect was fleeing at about, I believe it says 35 to 38 miles per hour. So a lot less excessive behavior by the suspect, but still fleeing police, not pulling over and stopping for the reduced, I guess, techniques used by police to try to effectuate the seizure. I think the technique is relevant. I mean, the surest way to stop a fleeing vehicle is to put an empty vehicle in the middle of the road. But perhaps. If all stop sticks and pit maneuvers are all less likely to injure the fleeing suspect, then just put an empty car in the middle of the road and he either stops or he. One could do that, and I think you're alluding to sort of Lankford, which this court decided last month. Well, except Lankford was just, as I read it, you don't know why the police officer that was joining the chase. Didn't know why. Pulled his vehicle in partly into the road, probably expecting to join the chase when the intoxicated suspect drove by. Instead he drove into the. Right into the path. He wasn't really blocking the road, but. Right. And drove into the path, as alleged anyway. It's like the passenger vehicles that get sideswiped in some of these flight cases. Okay. Well, in any event, I think this case, it falls between Moore, Jones and Scott. If you're looking at a spectrum of the suspect's behavior and the outcome and the force used by police in those cases. So Moore, Jones was, you know, obviously, and speaking of, that case involved a pit maneuver, like I said, at 35 to 38 miles per hour, and that vehicle went into a ditch and struck a culvert. You know, and Christensen sort of argued in reply brief that the officers arguably didn't know that that culvert was there. But then Christensen tries to distinguish this case from Moore, Jones by saying that Officer Eral knew about the pole at 2 a.m., you know, in the dark, that it was clearly obvious. I think that might be a stretch. And, oh, by the way, that's not in the petition either. So again, an attribution of facts to try to assert error against Judge Mahoney. That's not alleged that Officer Eral knew about the pole, but again, it's an obstacle in the ditch. It's regrettable. You know, after the pit, the vehicle hits the pole. That's regrettable. But not, it shouldn't be a fact considered, shouldn't consider that as to whether or not Judge Mahoney committed reversible error for making that judgment. But this case is between Scott and Moore, Jones, but it's more of a Scott because you have, you know, high speeds, again, as alleged by Christensen. It's going, you know, between 80 and 90 miles per hour and, you know, if there's a pit maneuver, you know, who knows really if it was really that fast at the moment the pit was executed. But, you know, we have to, we have to take a look at Judge Mahoney's order and marry it up with the petition. Complaint. I'm going to do that all day. You know, complaint, petition, so. It's more of a, this is more of a Scott though because of the high speeds and the outcome. Based on, based on that sort of spectrum, this kind of falls squarely within it. So I don't see, you know, the facts alleged in the complaint don't show a constitutional violation, Judge Mahoney said, and I think that the, the facts asserted to show that there was no threat, that, I've already said this a couple of times now and I'm sorry, but those factual assertions shouldn't be considered. I want to back up something that Judge Kobe said before about the threat, that there was no, no assertion by, in the complaint that there was no threat at all and that's correct. There was a threat and that's, you know, in all the cases, Moore, Jones, Scott, and all the progeny, it talks about the threat to the police officers too, that they're not, you know, they're not innocent bystanders that are, you know, standing there and it's just happening to them. But because their job is to protect the public, I mean, they're putting themselves at risk too and there is a risk to them when, when they have to try to stop a fleeing motorist that is, would otherwise present a danger to the public. You know, if it were proven that there was absolutely a clear road ahead, but there would still be a danger to the police officer too. So I think that the argument that there was no threat at all, you know, aside from the allegedly alleged or really properly briefed, the threat was still there. So that argument kind of lacks merit and fails. Counsel, before you sit down, do you know where this occurred and I assure counsel it won't affect, I know it's not in the record, but I've spent a lot of time in Sioux City. Do you know where this occurred, just as a general question? Do you know where Briar Cliff is? It's on Talbot Road where it's a gravel road, north end there. And again, that's not relevant to deciding the case, but I'm sure you're understandably curious. It strikes me that if there had been a lot of pedestrians around, the plaintiff's claim would have been that that's even more reason to let the car go because there's a likelihood in that case the car will slow down and reduce the threat to pedestrians. Yeah, I agree. I don't know. It seems to me this threat business works both ways. You mean the police officer could have slowed down? Yes. And let him go? Well, I mean the argument would be that in that case the car that was being pursued would have slowed down and there would have been less threat. Christensen always had that choice. I'm just saying it couldn't work both ways and that's why this kind of case is so difficult to assess. Well, I hope that you don't find this one difficult to assess. I believe that this one is between Moore, Jones, and Scott. If you think of them as a spectrum, this is right in the middle. Well, I said this kind of case. I see. Okay, I'm sorry. I didn't quite take your meaning. I see that my time is up, but I wanted to more, I guess, did I answer your question? Yeah, sorry. Okay. I wanted to get into a substantive due process, but I see my time is up. Do you have any questions? Thank you, Your Honors. Okay, I'm going to make some of my briefs and I don't need them. A rebuttal? Thank you, Your Honors. There's not a heightened pleading standard for constitutional violations under the federal rules of civil procedure. This is not a fraud case. Our only obligation is to plead sufficient facts to state a plausible claim. At that point, as this is a case involving qualified immunity, it then becomes the affirmative obligation of the defendants to state what facts, as alleged in the complaint, would provide justification for an action that would otherwise be a constitutional violation. And that is part and parcel as to why the difference between a summary judgment and a motion to dismiss is not a distinction without difference. In Scott v. Harris, that case was decided almost solely on video, which recorded the officer getting out of traffic, passing dozens of vehicles, forcing dozens more to go onto the shoulder of the road, at which point the officer with, I believe, at the time the stop was used, headlights on the horizon. Excuse me, following up on that, do you disagree with the district court's observation that the chase was a minimum of 2.6 miles here? No, I do not disagree with that. I do believe that that is something that the court could properly judicially notice. I believe that that is something that the district court could judicially notice, the 2.6 mile minimum. I don't take any issue with that. The last thing I would say is that if we look at the use of force as utilized here, as justified by an inherent threat of all high speed vehicle chases, then we are completely disregarding the fact-bound morass that the Scott court recognized that we must trod through in order to decide these cases and determine whether force was excessive or not. With that, your honor, I would just ask that the district court be reversed, in this case be remanded. Thank you. Thank you, counsel. The case has been thoroughly briefed and well argued and we will take it under advisement.